25 C.C.P.A.(Patents)

## OSTERMAN v. SALB.

### Patent Appeal No. 3918.

Court of Customs and Patent Appeals.

April 4, 1938.

Lockwood, Goldsmith & Galt and Ralph G. Lockwood, all of Indianapolis, Ind., for appellant.

Stone, Boyden & Mack, of Washington, D. C. (J. Austin Stone, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding to appellee priority of invention upon the three counts forming the issue of the interference. Appellant has brought the case before us for review.

The involved counts read as follows:

"1. A process of preparing hexamethyl-enetetramine bismuth iodide, which process comprises reacting hexamethylenetetramine with bismuth iodide in the presence of hydriodic acid liquid solution the solvent in which permits the precipitation of hexa-methylenetetramine bismuth iodide thus formed.

"2. A process of preparing hexamethyl-enetetramine bismuth iodide, which pro-cess comprises dissolving bismuth iodide in alcohol containing hydriodic acid, and adding to the resulting solution a solution of hexamethylenetetramine in alcohol to form a precipitate comprising hexamethylenete-tramine bismuth iodide.

"3. A compound for therapeutic use, consisting of hexamethylenetetramine bis-muth iodide in the form of red crystals, insoluble in water and in a number of the usual organic solvents, and being a valuable anti-syphilitic for oral administration."

■ The interference is between an ap-plication of appellee filed June 13, 1932, and an application of appellant filed Au-gust 23, 1932. Appellant is therefore the junior party, and the burden was upon him to establish priority of invention by a pre-ponderance of evidence.

As appears from the counts, the inven-tion relates to a process for preparing a compound described as hexamethylenetetra-mine bismuth iodide, and to the compound itself in the form of red crystals, claimed to be valuable in the treatment of syphilis.

The preliminary statement of appellant alleged conception of the invention on or about February 18, 1932, disclosure to oth-ers on or about February 19, 1932, and reduction to practice on July 24, 1932. The preliminary statement of appellee alleged conception on or about February 20, 1932, disclosure to others on or about May 15, 1932, and reduction to practice about May 25, 1932. Both parties took testimony.

The Examiner of Interferences held that appellant had not established conception of the invention prior to his filing date; that appellee had established conception of the invention as early as May 27, 1932; therefore, appellee being the first to con-ceive and first to reduce to practice, prior-ity of invention upon the counts was awarded to him. The Board of Appeals concurred in this view of the Examiner of Interferences.

The testimony shows that appellant was, at the time of the taking of such testimony, treasurer and general manager of the Cen-tral Pharmacal Company, of Seymour, Ind., which company was engaged in the manu-facture and distribution of pharmaceutical products and physicians' supplies; that ap-pellant had been connected with said com-pany for thirty years; and that he had com-pleted a course in pharmacy at Purdue University, Lafayette, Ind., in 1903. With respect to his duties as general manager of said company, he testified as follows:

"* * * I direct and oversee and am in complete charge of the development and production, control, and distribution of the products distributed by the Central Pharmacal Company."

Appellee testified that his profession was that of chemist, bacteriologist and pathologist; that he received the degree of Ph.C. from Purdue University in 1911, and the degree of M.D. from the St. Louis College of Physicians and Surgeons in 1919; that he had never practiced the profession of Doctor of Medicine, but at the time his testimony was taken was engaged in the practice of "pathological, bacteriological chemistry," under the name of the Salb Laboratories, Inc., Seymour, Ind.; that from 1912 to 1921 he was employed as a chemist by various concerns, and in August, 1921, he was employed as a chemist by said Central Pharmacal Company, and continued in such employ, with the exception of an interval of three months, from that time until October, 1929; that from October, 1929, to December, 1931, he was connected with the Seymour Clinic, conducted by a group of physicians, and in December, 1931, established his own laboratory; that from the time he left the employ of said Central Pharmacal Company until June 8, 1932, he was employed by said company only as a consultant, without any fixed salary; that he had been working upon the treatment of syphilis since 1915, and in 1930 made a series of bismuth compounds for intramuscular injection, one of which compounds he described as "Bismuth Sodium Succinate."

Appellee testified that he conceived the involved invention on February 17, 1932, after reading an article in the February 13th issue of the Journal of the American Medical Association, in which an alleged remedy for syphilis, viz., Iodobismitol, was discussed. In this article hexamethylenetetramine was discussed as a compound which does not ionize, but yet can appear in the cerebrospinal fluid. However, this compound formed no part of the remedy discussed in said article. It appears that hexamethylenetetramine is a compound which has the power of penetrating the brain and spinal fluid.

Appellee further testified that he showed the article in said journal to appellant on or about February 19, 1932, and that he told appellant that he, appellee, could produce a compound of hexamethylenetetramine and bismuth iodide, but did not tell appellant how he would do it.

Appellant admits reading said article, and does not deny that appellee showed it to him. He, appellant, testified that on February 18, 1932, he, with the assistance of Miss Harrington, a chemist in the employ of said Central Pharmacal Company, set about to devise a formula which might embrace bismuth iodine and hexamethylenetetramine in a compound which could be used for the treatment of "venereal disease;" that he conceived such a formula, which was placed upon paper, for the most part in the handwriting of Miss Harrington; and that, on the next day, appellant requested appellee to assist him in the production of a compound which would contain said elements in the approximate proportions shown in said formula. Said formula was introduced in evidence as Appellant's Exhibit 1. Appellant further testified that he supplied appellee with the materials which might be used in the production of said compound; that he discussed the formula with appellee, and that his chemist, Miss Harrington, assisted appellee in experiments with the formula; that on March 4, 1932, he obtained a sample of the compound represented by said formula from appellee.

In appellant's testimony we find the following question and answer:

"Q. 37. At the time you drew up the formula, did you have any method or plan which you would follow to make the compound? A. The manufacture of the compound would be obvious by looking at the composition of the formula. For example, my compound required the presence of Bismuth, Iodine, Nitrogen, Carbon and Hydrogen, as associated in Hexamethylenetetramine. Therefore, you would use in the production of a compound which would answer the description of my formula, a Bismuth Salt of Iodine and an Iodide of Hexamethylenetetramine. I believe that answers your question."

Appellant testified further that on June 6, 1932, he made a written description of the invention and signed it, his wife and daughter witnessing his signature; that he placed it in an envelope, addressed it to himself, and registered it; and that it was opened for the first time when his testimony was taken, on November 2, 1934. This letter was offered in evidence as Exhibit 4.

Appellant further testified that appellee's relations with the Central Pharmacal Company were severed in June, 1932; that ap-

pellee was paid upon the basis of a salary of $200 per month, and that the Central Pharmacal Company paid for the materials used by appellee in producing the compound here involved; that he, appellant, got the idea of the use of hexamethylenetetramine in the compound here involved by being familiar with a compound containing hexamethylenetetramine and iodine, made by the Central Pharmacal Company, and used by appellant's father, who was a practicing physician, in the treatment of various infections; that prior to February 18, 1932, and in 1931, he was interested, for his company, in obtaining a bismuth compound which might be beneficial in the treatment of "venereal disease," and which could be produced and sold by his company to physicians.

Eloise Harrington, a witness in behalf of appellant, corroborated appellant's testimony with respect to the making of said formula, Exhibit 1; she testified that he communicated the same to her, and that she, under his direction, wrote most of the formula; appellant writing a small portion thereof.

Appellee testified that in March, 1932, he produced the compound embraced in the involved counts; that appellant never disclosed to him the said formula, Exhibit 1, and that he, appellee, did not disclose to appellant the involved invention; and that he never gave to appellant any samples of the involved compound. We also understand from appellee's testimony that he claims that he never gave to any employee of Central Pharmacal Company any samples of his product, but did give to Miss Harrington, for analysis, some test tubes containing the condensed product of brains of animals which had been treated with his product, and also sent her one or two rats which had been so treated. Appellee further testified that he had trained Miss Harrington in chemical operations, and that he asked her to make certain tests of the material contained in said test tubes, as a personal favor to him; that he placed upon the market the compound embraced in the involved counts in the latter part of May and the first part of June, 1932, and that the first shipment of said compound was on July 3, 1932.

■ The foregoing is a very brief outline of the testimony relating to the conception of the involved invention by the parties. We have examined all of the testimony with care, and do not deem it neces-

sary to present it further in detail. Much of the testimony relates to the subject of whether, from February 18, 1932, to June, 1932, appellee was an employee of the Central Pharmacal Company; but, in view of our conclusion, this is a matter of no importance in this proceeding, for the reason that, before the doctrine of employer and employee may be invoked, it must be established that the employer conceived and disclosed to the employee at least the broad idea of the invention involved. Jameson v. Ellsworth, 40 App.D.C. 164.

The Patent Office tribunals concurred in finding that appellant had not established conception of the invention prior to his filing date; specifically, it was held that the formula, Appellant's Exhibit 1, and the evidence connected therewith, did not establish conception of the invention embraced in the counts, and furthermore, that Appellant's Exhibit 4, the registered letter hereinbefore referred to, did not establish such conception.

■ The question of conception of the invention is a question of fact, involving highly technical questions of chemistry, and the rule is here especially applicable that concurring decisions of the Patent Office tribunals upon questions of fact will not be disturbed unless it appears that such decisions are manifestly wrong.

We are frank to say that the testimony upon both sides is far from satisfactory, and the testimony of both appellant and appellee impresses us as being lacking in complete frankness.

■ We shall point out a few of the specific points in the record which lead us to the conclusion that we, under the rule above stated, would not be warranted in reversing the decision appealed from. We shall confine our discussion largely to the formula, Appellant's Exhibit 1, for it is immaterial whether Appellant's Exhibit 4 disclosed the involved invention, since it is dated June 6, 1932, which is subsequent to appellee's date of conception, viz., as early as May 27, 1932, which date is well established by the record.

It is true that appellant positively testified that Exhibit 1 was made on February 18, 1932, and in this he is corroborated by the witness Harrington. Also, one Dr. Harger, a qualified chemist employed as an expert witness by appellant or his company, testified that said Exhibit 1 constituted a complete disclosure of the invention

here involved. That Exhibit 1 discloses the invention was flatly denied by appellee, himself a qualified chemist, and, as hereinbefore stated, the Patent Office tribunals have found that it does not disclose the invention. While appellant testified that he disclosed to appellee the formula shown in Exhibit 1, he does not claim to have left said exhibit with appellee, which would have been expected if appellant believed that said exhibit disclosed the invention here involved.

Another fact pertinent to this question is that, in the February, 1934, term of the Jackson circuit court in the state of Indiana, in an action there pending, brought by the Central Pharmacal Company against appellee and others, involving, among other things, the invention before us, the plaintiff in that action filed what was termed a "Second Amended Complaint," which alleged that appellee discovered and invented the compound set out in Exhibit A, attached to said complaint, as a part of his duties as an employee of plaintiff. There appears in the record a document entitled "Second Amended Exhibit A," as a part of said "Second Amended Complaint." Said "Second Amended Exhibit A" sets out a formula for the compound there involved, which compound apparently is embraced in the counts here involved. This pleading was introduced in evidence in the instant proceeding by appellant.

In the instant proceeding appellant testified that, at the time the complaint was filed in said circuit court of Indiana, he was acquainted with the contents thereof and believed the statements therein to be correct. He further testified that, upon the trial of said action, the formula, Exhibit 1 in this proceeding, was not referred to because he, appellant, did not think that it had any bearing upon that case.

Another circumstance which we consider of importance is that, although appellant testified in the instant proceeding that the manufacture of the compound would be obvious by looking at the composition of his formula, Exhibit 1, when the Central Pharmacal Company finally produced a compound embraced in the counts here involved, appellant's formula, Exhibit 1, apparently was not followed, but appellee's product was analyzed and reconstructed by chemists in the employ of the Central Pharmacal Company, and it appears that eight weeks of experimenting ensued before the compound was produced.

Another circumstance, perhaps of minor importance, is that nowhere in appellant's application for patent is the formula, Exhibit 1, set out, although this may be due to the fact, if fact it be, that, in perfecting the product, a different formula in some minor particulars was used.

On the other hand, we are of opinion that appellee did furnish to appellant or Miss Harrington samples of the compound produced by him, and that she assisted him in making tests of the same. Without attempting to analyze the testimony further, we content ourselves with stating that, after a careful examination of the entire record, we are not satisfied that the Board of Appeals was manifestly wrong in its decision.

The burden was upon appellant to establish priority by a preponderance of evidence, and we are not satisfied that he has done this.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.